Argued and submitted August 31, 1987, reversed and remanded July 6, reconsideration denied September 2, petition for review denied September 29, 1988 (306 Or 661)

# STATE OF OREGON,
*Respondent,*

*v.*

# KIRK ANTHONY VAUGHN,
*Appellant.*

### (C-2671; CA A42629)

757 P2d 441

Alan J. Schmeits, Baker, argued the cause for appellant. With him on the briefs was Silven, Schmeits & Vaughan, Baker.

Tim Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, assigning as error the trial court's denial of his motion to suppress. The trial court upheld the warrantless search under the so-called automobile exception. We hold that there was no lawful basis for a warrantless search and reverse and remand.

As part of an undercover narcotics investigation, Cummings, an undercover officer, contacted Graven, a known drug dealer, to buy a pound of marijuana. Graven indicated that he could get the marijuana through his "man" in Emmett, Idaho. He arranged for his "man" to come to Baker on April 15, stay overnight and make the delivery to him the next day in Richland, Oregon. After making the arrangements with Graven for the purchase, the police learned from the telephone company that, on April 15, Graven called defendant's number in Idaho. In the meantime, other officers involved in the investigation had gathered additional information regarding defendant. They were aware that he and Graven had been seen together in the Richland area, that he had been convicted in 1982 of delivery of a controlled substance and that the police in Emmett suspected him of illegal drug activities, including transferring drugs from Humbolt County, California.

On April 15, Emmett police, who were in contact with Oregon police, placed defendant's house under surveillance. They watched him load luggage into his vehicle and depart and followed him to the Idaho border, where Oregon officers took over. The Oregon investigation team discussed obtaining a warrant to search defendant's vehicle but decided against it, because it would take four hours to do so. The officers feared that the drugs could be distributed or would otherwise disappear during that time. One officer testified that a telephonic warrant was not feasible, because the necessary equipment had not been set up. The officers decided, instead, to stop defendant and search his vehicle at Encina, about eight miles from Baker. However, before reaching Encina, defendant turned off the freeway and stopped at a residence in Pleasant Valley. The officers watched the residence for approximately 25 minutes. They then approached the house and ordered all of the occupants, including defendant, out of the house. They

directed them to lie on the ground, where they were guarded by armed officers. Defendant refused their request for permission to search his vehicle. They then did so anyway, opened the luggage and found a large amount of marijuana. Defendant was formally arrested after the marijuana was found.

The state argues that there are three bases on which the search is valid: the automobile exception, a search incident to an arrest or an individualized showing of exigent circumstances. The trial court held that there was probable cause for the search and that the facts of the case fall within the automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986); *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986).[1]

Under the exception, an officer may search an automobile without a warrant if it is mobile at the time when it is lawfully stopped and if there is probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Brown, supra.* Defendant argues that the automobile exception is not applicable in this case, because it applies only to vehicles which are mobile when lawfully stopped. The court in *Brown* specifically noted that it was not deciding whether the exception applies to the search of a vehicle that is not mobile or has not just been lawfully stopped. 301 Or at 277. However, in *State v. Kock,* 302 Or 29, 33, 725 P2d 1285 (1986), the court was confronted with a warrantless search of a parked, unoccupied and immobile car. The court refused to extend the exception to cars that are immobile when first encountered by police.

The state argues that the *Kock* limitation on the automobile exception applies only when the police find a car parked and unoccupied when they first encounter it. In this case, it argues, defendant was driving the car when the police first observed him, although he had left it before they first confronted him.

---

[1] Defendant argues that there was no probable cause for the search of his vehicle. In order to meet the probable cause requirement for a warrantless search, the facts must be such as to lead a reasonable person to believe that seizable things will probably be found in the location to be searched. *State v. Anspach,* 298 Or 375, 380, 692 P2d 602 (1984). Here, the objective facts known by the police were sufficient to lead a reasonable person to believe that marijuana would probably be found in defendant's vehicle.

We hold that the automobile exception should not be extended under these circumstances. In adopting the exception, the court in *Brown* emphasized that it was setting the outer limit for warrantless automobile searches when there are no other exigent circumstances. The court also emphasized in *State v. Kock, supra,* that it had not chosen to extend the exception as far as the Supreme Court of the United States has under the Fourth Amendment. The rationale in *State v. Brown, supra,* is that mobility of the vehicle at the time when it is stopped provides the necessary exigency to support an immediate search. Here, that exigency was not present. Although defendant's vehicle was mobile when the police first saw it, it was not when they first confronted defendant. Accordingly, we hold that the automobile exception does not apply.

■ The state also argues that other exigent circumstances justify the search. It contends that "the search and seizure here was justified by the exigent circumstances that were present by easily disposable evidence being transported in a readily mobile vehicle, which was temporarily stopped in a remote location where there was a practical unavailability of a magistrate to issue a warrant." We do not agree. The exigencies presented by the circumstances of this case are not sufficient to justify a warrantless search.[2] Defendant's vehicle had been parked in the private driveway for 25 minutes before the officers approached the residence. It was parked in front of another vehicle, making it difficult for defendant or anyone else to move it without first moving the other vehicle. At the time of the search, there was no indication of any possibility that someone would attempt to move the vehicle or the evidence. *See State v. Nicholson,* 89 Or App, 306, 312, 748 P2d 1028 (1988).

■ Finally, the state argues that the search was valid as incident to a lawful arrest. Although defendant was not formally arrested until after the search, he was, in effect, arrested when the officers ordered him out of the house and onto the ground. ORS 133.005(1). A search incident to an arrest is not

---

[2] ORS 133.545(5) authorizes the issuance of warrants by telephone. In discussing this provision, *Commentary to the Proposed Oregon Criminal Procedure Code* 73, § 133 (1972), states: "The vast spaces of eastern Oregon in particular have prompted the Commission to include this unique device."

limited to situations where it is necessary to protect an officer's safety or to prevent the destruction of evidence. The police may also search for evidence relevant to the crime for which the defendant is being arrested. However, such a search must be reasonable in time, scope and intensity. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

Although it is clear that the search was for evidence that was relevant to the crime for which defendant was being arrested and that it was contemporaneous with the arrest, the controlling question is whether the search was sufficiently close in space to the arrest. We conclude that it was too far removed from where the act of arrest took place to justify a search incident to an arrest. As explained in *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), such a search must be for a crime, "evidence of which could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest." 302 Or at 200. The evidence was not in defendant's immediate possession at the time of the arrest.

We recognize that we have upheld searches incident to arrest when there has been some distance between the places of arrest and of the search, and when the evidence was not, technically, in defendant's immediate possession. For example, in *State v. Fessler,* 68 Or App 609, 685 P2d 1014 (1984), the defendant was arrested for driving while suspended and for giving a false name to a police officer. He was taken from his car and placed in a patrol car. The officer then went to lock the defendant's car and, in the process, searched the interior for identification and found marijuana. We upheld the search. *See also State v. Caraher, supra.* However, in those cases, the defendant was in possession of the evidence immediately before the arrest, and the police separated the defendant from the evidence by the arrest. The defendant in *Fessler* was in his car just before the arrest and left it under police orders. The defendant in *Caraher* was holding her purse just before the arrest and continued to do so until the police took it. In this case, the police had nothing to do with defendant's leaving his car. He had done so almost a half an hour before his arrest and was not even close to it at the time of the arrest. Accordingly, we hold that the officers' search of the car was not a proper search incident to arrest and violated Article I, section 9, of the Oregon Constitution.

Reversed and remanded.