Argued and submitted July 29, 1988, resubmitted In Banc January 11, affirmed May 24, reconsideration denied July 14, petition for review denied September 6, 1989 (308 Or 331)

# STATE OF OREGON,
*Respondent,*

*v.*

# WALTER SEAF HARTLEY,
*Appellant.*

## (10 86 09945; CA A46193)

773 P2d 1356

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief was McCrea, P.C., Eugene.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

Warren, J., specially concurring.

Buttler, J., dissenting.

## GRABER, J.

Defendant was convicted of unlawful possession of a controlled substance, ORS 475.992(4), and of pointing a firearm at another. ORS 166.190. He assigns as error the denial of his motion to suppress a gun found in the trunk of his car and methamphetamine found in his wallet. We affirm.

The parties stipulated to these facts: On October 23, 1986, Eugene police received a report about a man pointing a gun at one or more persons in the parking lot of a fast food restaurant. When the police arrived at the parking lot, defendant was closing the trunk of a parked car; he then walked around to the front and opened the driver's side door. A police officer ordered him to put his hands on the car, handcuffed him, and moved him away from the car. The police interviewed witnesses and concluded from their statements that the gun was in the trunk of defendant's car. About ten minutes after the first officer arrived, the police obtained the key from defendant, opened the trunk, searched it, and seized the gun.

Defendant was transferred to jail and booked. An officer who conducted the booking procedure opened defendant's wallet, which was closed on the outside with snaps. He removed some money and defendant's driver's license and then opened a zippered compartment. There he found some credit cards; between two of them he discovered a small folded piece of transparent plastic. Through it he could see a brown grainy substance, which he seized. It was later determined to be methamphetamine.

The trial court, denying defendant's motion to suppress, said:

"With regard to the car, I suppose that could go either way. I would not say that a car could be searched incident to an arrest merely because the arrest takes place close to the car. On the other hand, I'm influenced by the fact that the police had been advised, apparently by the defendant as well as others, that he had put the very instrumentality that he had committed the crime with, namely the gun, in the trunk. And they didn't purport to search the entire car, but only to go directly to the part of the car that was separate from the rest of the car, where he said he put the gun. And in my judgment, he had made that a part of his personal effects by having access to that trunk of that car and putting the gun in it. He

treated the trunk of that car like a briefcase or a suitcase or something else. And I think that the officers, in common sense, had a right to go directly to that trunk, not purporting to search the entire car, and to obtain the instrumentality of the crime as an incident to an arrest.

"With regard to the inventory search [*sic*], my understanding—and it may be misguided—has been that in the book-in process the police have considerable latitude in looking through the personal property brought into the jail. Even though it's supposedly going to be in the custody of the officers and inviolate, the fact is that they have an interest in identifying valuables, [to] protect themselves from claims. And I think they have an interest in identifying contraband, particularly drugs, and not having them within the walls of the jail even if they are not accessible to the general jail population."

Defendant contends, first, that the warrantless search of the trunk neither was a search incident to his arrest nor satisfied the "automobile exception" to the warrant requirement and was, therefore, illegal. We agree with the state that the search was proper incident to defendant's arrest.

The scope of a search of an automobile conducted incident to an arrest is subject to the same criteria as any search incident to an arrest. If the search is for evidence related to the crime for which the defendant was arrested, it must be reasonable in time, scope, and intensity. Each case depends on its own facts. There is no "container rule" that sets precise limits on the scope of such a search. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Flores,* 68 Or App 617, 633-635, 685 P2d 999, *rev den* 298 Or 151 (1984). In most cases, it would not be reasonable to open the trunk of a car as part of a search incident to arrest. *See State v. Martin,* 71 Or App 1, 691 P2d 154 (1984); *State v. Flores, supra; State v. Fesler,* 68 Or App 609, 685 P2d 1014, *rev den* 297 Or 546 (1984). We have held, however, that the search of a trunk was proper incident to an arrest when the police, immediately before the arrest, saw the defendant place a package that they knew contained cocaine in the trunk. *State v. Kosta,* 75 Or App

713, 708 P2d 365 (1985), *aff'd on other grounds,* 304 Or 549, 748 P2d 72 (1987).[1]

In this case, the officers knew that defendant had had a gun, they saw him close the car trunk immediately before the arrest, and they learned from witnesses that he had placed the gun in the trunk. The search of the trunk was limited in scope to the area of defendant's arrest, and it was reasonable in intensity, given the officers' knowledge of defendant's activities. The ten minutes that passed between the arrest and the search was not an unreasonable time. *See State v. Kirsch,* 69 Or App 418, 686 P2d 446, *rev den* 298 Or 151 (1984). The search was proper incident to defendant's arrest.[2]

Defendant next argues that the methamphetamine should have been suppressed, because the inventory of the contents of his wallet was improper given the principles expressed in *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1984). On that issue, we affirm without opinion by an equally divided court.

Affirmed.

**WARREN, J.,** specially concurring.

Although I agree with the majority that the search of the trunk was lawful, I disagree with the rationale of both the majority and the dissent. I disagree with the majority's holding that the search of the trunk is justified as incident to his arrest. The majority relies on our version of *State v. Kosta,* 75

---

[1] Judges Buttler and Warren assert that our opinion in *State v. Kosta, supra,* is inapplicable, because the Supreme Court adopted a different rationale and because the police in that case had obtained a warrant for the package. Although the Supreme Court upheld the search on other grounds, it did not suggest that a search of a car trunk cannot be proper incident to an arrest, if the usual criteria are met. Neither is the absence of a warrant in this case dispositive. The warrant in *Kosta* authorized the search *only of the package* that defendant had, not of the closed car trunk. A separate rationale—search incident to arrest—was required in order to uphold the additional search. Similarly here, the officers would have been authorized, incident to the arrest, to seize defendant's gun, if it had been in his hand or visible in the passenger compartment of the car, without obtaining a warrant. The search of the trunk was also proper incident to the arrest, because it was reasonable to believe that evidence would be found there and the search was appropriately limited in time, scope, and intensity.

[2] Because we conclude that the search was proper incident to defendant's arrest, we need not consider his argument that it did not meet the criteria for the automobile exception to the warrant requirement. *See State v. Brown,* 301 Or 268, 721 P2d 1357 (1986).

Or App 713, 708 P2d 365 (1985), *aff'd on other grounds,* 304 Or 549, 748 P2d 72 (1987), for the proposition that, under that exception, the trunk of a vehicle may be searched. Although we did say in *Kosta* that the search of the trunk was proper incident to the defendant's arrest, the police had obtained a warrant to search for the package and had executed that warrant before the defendant put the package in his trunk. We held that there was no purpose in "judicially testing the officers' probable cause to seize the package after they had obtained a warrant to search it, simply because defendant had put the package in a larger container—his car trunk." 75 Or App at 720. Here, the police did not have a search warrant for the gun and, therefore, the justification for expanding the search to the trunk of the vehicle did not exist.

Moreover, as the dissent points out, the Supreme Court, on review, did not accept our rationale. Rather, it held that the search was valid under the "automobile exception." *See State v. Brown,* 301 Or 268, 721 P2d 1357 (1986). I agree with the dissent that neither *State v. Kosta, supra,* nor any other Oregon case, justifies this search as incident to arrest.

I also agree with the dissent that the search of the trunk of defendant's vehicle could be understood not to fall within the "bright line" mobility test that the Supreme Court has defined for the application of the automobile exception. In *State v. Brown, supra,* 301 Or at 276, the court held that the vehicle must be "mobile at the time it is lawfully stopped." It further defined the concept of mobility in *State v. Kock,* 302 Or 29, 33, 725 P2d 1285 (1986), in which it held that the search of a "parked, immobile and unoccupied" vehicle does not fall within the exception and that the criteria in *Brown* sets the "outer limit" for it. The vehicle in this case was parked and not moving when the police approached it. However, it certainly was, as far as the officers could tell, mobile in the sense that it was capable of being moved and would have been moved but for the fortuitous circumstance that defendant had not yet turned the key. The Supreme Court has not yet told us what it means when it says the automobile exception applies only to "mobile" vehicles. If, as the dissent assumes, it must actually be moving, no matter how slightly, then the application of the court's mobility requirement to the facts in this case illustrates that that test is illogical and demonstrates that the court should revisit the issue.

The automobile exception is a *"per se* exigency rule,"
based on a vehicle's mobility at the time of the stop. *State v.
Brown, supra,* 301 Or at 276-77. The purpose of the rule is to
prevent the removal of evidence before a search warrant can
be obtained. Undoubtedly, a *per se* exigency exists when an
automobile is brought to a stop by the police and the driver
remains in it. *See State v. Brown, supra.* At the other extreme,
it is also readily apparent that, when the driver of a parked
and immobile vehicle is not near the vehicle, or is near it but
does not have keys or immediate access to the ignition, there is
no *per se* exigency. *See State v. Kock, supra.* The facts in this
case more closely resemble those in *Brown.* Although the car
was "immobile" in the sense that it was not moving, defen-
dant was opening the front door of the vehicle, and it appeared
that, unless he was stopped, he would immediately drive away.
There is no sound basis for drawing a bright line distinction
between a vehicle that is actually moving, no matter how
slightly, and one that could be made readily capable of move-
ment by the mere turning of a key in the ignition by a driver in
a position to do so. Such a distinction ignores the fact that the
exigency supporting an immediate search is identical in either
case.

If, indeed, a bright line should be drawn, then it
should be drawn consistently with the purpose behind the *per
se* exigency rule. A defendant who is within reach of the keys
and the ignition of a vehicle creates the same justification for
an immediate search as a defendant who is coming to a stop as
he parks his vehicle or one who is starting his vehicle as he
leaves a curb. In fact, it is not really significant in a practical
sense whether or not the vehicle is moving or stopped. What is
significant in justifying an immediate search is whether the
vehicle is likely to be moved from where it is stopped. There-
fore, I would hold that the warrantless search of the trunk was
justified under the automobile exception.

Rossman and Riggs, JJ., join in this opinion as well as
in the opinion of the majority.

**BUTTLER, J.,** dissenting.

I dissent from the majority's holding that the search
of the trunk of defendant's automobile was justified as inci-
dental to his arrest. Further, because the so-called automobile

exception to the warrant requirement, *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), is inapplicable, the evidence obtained from the search of the trunk must be suppressed.

With respect to the automobile exception to the warrant requirement, the court in *Brown* adopted a very narrow *per se* exigency exception to provide "the cleanest guidelines for police in conducting automobile searches." 301 Or at 277. The "key" to that exception "is that the automobile need be mobile at the time *it* is lawfully stopped." 301 Or at 276. (Emphasis supplied.) Judge Warren would apply the exception in this case, even though the vehicle was not stopped by the police; defendant was stopped before he entered it.

That the court meant exactly what it said in *Brown* and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), is made clear in *State v. Kock,* 302 Or 29, 32, 725 P2d 1285 (1986):

> "[W]e emphasized in *State v. Brown, supra,* that we were not confronted with the search of a vehicle that was not mobile or that had not just been lawfully stopped by a police officer. We are now confronted with such a case. Although logically it can be argued that the rationale of the seminal case of *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), and its progeny, including *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), would justify extending the automobile exception to automobiles that are capable of mobility, we elect to draw the so-called bright line of *Brown* just where we left it in that case: Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence. In this case, we assume for the sake of argument that there was probable cause for the search of the automobile. We nevertheless hold that any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the *prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.* Here, the prosecution failed to demonstrate any individualized exigent circumstances.
>
> "As emphasized in *State v. Brown, supra,* and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), the police need clear guidelines for their actions. Citizens of this state also

need to have their constitutional rights spelled out as clearly as possible. Forensic advocates can make a good case to draw the warrantless search line elsewhere and have in fact convinced the Supreme Court of the United States to extend the automobile exception to a stationary but operational vehicle in a public parking lot as being as readily mobile as one just stopped on a highway. *See California v. Carney,* 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985). On the other hand, constitutional scholars, *see State v. Brown, supra,* 301 Or at 279 (Linde, J., dissenting); *State v. Bennett, supra,* 301 Or at 310 (Lent, J., dissenting), and other state courts interpreting their own constitutions, *see State v. Opperman,* 247 NW2d 673 (SD 1976); *State v. Ringer,* 100 Wash 2d 686, 674 P2d 1240 (1983), believe that there should be no automobile exception as such.

"We choose not to stretch the automobile exception as far as the Supreme Court of the United States has done in interpreting the Fourth Amendment, nor do we retreat from the position taken in *State v. Brown, supra.* However, *Brown* sets the outer limit for warrantless automobile searches without other exigent circumstances." (Emphasis supplied.)

The state does not contend that there were individualized exigent circumstances here. Therefore, the search must be justified, if at all, as incident to defendant's arrest.

Traditionally, a warrantless search incident to arrest was justified to protect the officer and to preserve evidence of crime from destruction or concealment. *See State v. Owens,* 302 Or 196, 729 P2d 524 (1986). In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the court limited a permissible search for evidence to that which relates to the crime for which the arrestee is arrested, and the evidence must be of a kind that could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. However, the search may be carried out even after the "portable repositories" of personal effects, *State v. Owens, supra,* 302 Or at 202, have been removed from the arrestee's control and are under the exclusive control of the police.

That kind of warrantless search need not be justified by probable cause independent of that required for the arrest, or by exigent circumstances. It is enough that the police have reason to believe that the effects may contain evidence of the crime for which the arrest was made. On the other hand, the

"automobile exception" adopted in *Brown* does require probable cause, even though the driver has been arrested; the mobility of the automobile when stopped provides a *per se* exigency.

Both federal and state cases that have sustained automobile searches incident to arrest appear to have been limited to the search of the passenger compartment occupied by the arrestee immediately before the arrest. *See State v. Martin,* 71 Or App 1, 691 P2d 154 (1984); *State v. Fesler,* 68 Or App 609, 685 P2d 1014, *rev den* 297 Or 547 (1984). To extend the scope of such a search would exceed the scope permitted under the Fourth Amendment, *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), unless the case falls within the automobile exception. *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982). Here, defendant did not occupy the automobile immediately before or contemporaneously with his arrest, and the search was not limited to the passenger compartment. Accordingly, this case does not fit within the search incident to arrest exception to the warrant requirement. The addition of probable cause to search the trunk of the car, in the absence of exigent circumstances, does not support the warrantless search. If it did, there would have been no need for, or utility in, the automobile exception adopted by the Oregon court in *Brown* or the United States Supreme Court in *Ross.* Therefore, there had to have been exigent circumstances here in order to authorize the search without a warrant, and there were none.

The police had probable cause to seize the automobile and had time thereafter to seek a search warrant. *State v. Owens, supra.* They had defendant in custody and had the keys to the car. The state does not contend that there was not time to obtain a warrant. *See State v. Nicholson,* 89 Or App 306, 748 P2d 1028, *rev den* 305 Or 672 (1988).

The majority's reliance on this court's decision in *State v. Kosta,* 75 Or App 713, 708 P2d 365 (1985), *aff'd on other grounds,* 304 Or 549, 748 P2d 72 (1987), as authorizing the search of the trunk of defendant's automobile as a search incident to his arrest is misplaced. In *Kosta,* we relied on the facts that the police had obtained a valid search warrant to search a package in transit, had conducted a search of the package and found cocaine and had then caused it to be delivered to the addressee, who turned it over to the defendant

when he arrived to pick it up. The defendant then put it in his automobile trunk, which the police opened immediately after arresting him. We stated this rationale for that search:

> "The purpose of the warrant requirement is to test the officers' probable cause before a magistrate. That requirement had already been met here with respect to the package, for the search of which a warrant had issued. It is difficult to perceive what purpose would be served by judicially testing the officers' probable cause to seize the package after they had obtained a warrant to search it, simply because defendant had put the package in a larger container—his car trunk. There is no doubt that, if defendant had put the package in the passenger compartment, the officers could have seized it incident to his arrest for possession of the package containing cocaine, a felony committed in their presence. Not only did the package relate to the reason for his arrest, it *was* the reason for his arrest, and its seizure was limited in time, scope and intensity. *State v. Caraher [supra]; State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984)." 75 Or App at 720. (Emphasis in original.)

On review, the Supreme Court did not accept our rationale. Instead, it upheld the search under the automobile exception that it had adopted in *Brown* after our decision was handed down. *State v. Kosta, supra,* does not support the search here as incident to defendant's arrest, and I know of no other Oregon cases that do.

Accordingly, I dissent from the majority's decision that the automobile search was valid.

Joseph, Chief Judge, and Newman, J., concur in this opinion.